RECEIVED
IN LAKE CHARLES, LA
MAR 28 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LECIA P. McCULLOUGH, KIMBERLY G. DARLING, AND PAULA J. DAVENPORT | : | DOCKET NO. 04 CV 2579 |
| VS. | : | JUDGE MINALDI |
| SERGEANT KEVIN KIRKUM, CITY OF LAKE CHARLES, DONALD DIXON, and THE LAKE CHARLES POLICE DEPARTMENT | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court are motions for summary judgment filed by defendants, City of Lake Charles ("the City"), Donald Dixon ("Dixon") and the Lake Charles Police Department ("LCPD") [docs. 12, 14 & 47][1], a motion for summary judgment filed by defendant Kevin Kirkum ("Kirkum") [docs. 18 & 50],[2] and a motion for partial summary judgment filed by plaintiffs, Lecia P. McCullough ("McCullough"), Kimberly G. Darling ("Darling"), and Paula J.

---

[1] The original motion filed by the City, Dixon and LCPD [doc. 14] was filed as a motion to dismiss pursuant to Rule 12(b)(6). However, because the parties relied upon matters outside the pleadings, the motion was treated as one for summary judgment and the parties were invited to submit additional briefs. Prior to the conversion of the motion to dismiss to one for summary judgment, these defendants filed a separate motion for summary judgment [doc. 12] in which they asserted substantive defenses to plaintiffs' claims. Both motions are addressed in this ruling.

[2] *See supra,* n. 1. The motion to dismiss filed by Kirkum also was converted to a summary judgment for the same reason as set forth above.

Davenport ("Davenport") (collectively, "plaintiffs") [doc. 16]. Having reviewed the memoranda in support and opposition, defendants' motions are GRANTED and plaintiffs' motion for partial summary judgment is DENIED for the reasons set forth below.

**Background**

Plaintiffs assert claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1983 as well as state law claims pursuant to La. Civ. Code art. 2315. Plaintiffs are all employees of the LCPD.[3] They bring this suit, alleging an ongoing pattern of sexual harassment on the part of Kirkum, their co-employee and superior ranking officer. Plaintiffs allege that LCPD management failed to respond adequately to their attempts to report Kirkum's conduct, thereby creating a hostile work environment. Additionally, plaintiffs allege that they were retaliated against for reporting Kirkum's conduct and filing an EEOC complaint.

*A. The 2003 Formal Complaint of Harassment*

On May 12, 2003, McCullough filed a formal sexual harassment complaint with Lt. Robert W. Smith and Sgt. Steven C. Law of the Internal Affairs/Professional Standards Division of LCPD ("Internal Affairs"). In her report, she stated that on May 9, 2003, while she was retrieving mail from her mailbox, Kirkum approached her, stood so close behind her that he made physical contact with her, and whispered, "you know what I want." McCullough stated that she stepped away from Kirkum and responded "I know what you want but you're not going to get it."[4] Kirkum allegedly replied, "You know I miss you."

---

[3] McCullough and Darling are both corporals and Davenport is a police records clerk. *See Plaintiffs' Complaint*, ¶¶ 3-5.

[4] In the subsequent Internal Affairs investigation, Debora Rasch, an LCPD employee, was able to partially confirm that the incident occurred. Although she had her back turned and did not

In addition, McCullough complained that on May 8, 2003, she encountered Kirkum while exiting the back door of the police station. A conversation over scheduling ensued, after which she claimed that Kirkum stated to her "Lecia, I've missed you, when are we going to hook up?" McCullough stated that she pushed past Kirkum and left the station. Although she gave very few specifics, McCullough told Lt. Smith and Sgt. Law that she had experienced this type of inappropriate behavior from Kirkum in the past and that on previous occasions she had told him that she did not approve.

Immediately upon hearing from McCullough, Lt. Smith, Sgt. Law, and Division Supervisor Capt. DuBrock met with Dixon, LCPD's Chief of Police, to explain the substance of the complaint. Based upon the information available at that time, Dixon ordered an administrative investigation, focusing on Kirkum's alleged violation of LCPD's policy prohibiting sexual harassment.[5]

On May 13, 2003 Lt. Davenport, accompanied by her supervisor, Lt. Eva Antoine met with Internal Affairs to report additional incidents of inappropriate conduct by Kirkum. She claimed that on May 12, 2003, while standing with another police officer on the front lawn of the Lake Charles Civic Center awaiting the LCPD's annual inspection, Kirkum approached her from behind, put his hands on her shoulders and turned her toward him, then began to rub her shoulders while whispering in her ear about how he liked her red hair. Davenport claimed that she was able to move away from Kirkum when the other officer with whom she had been

---

hear anything said by Kirkum, she did remember hearing McCullough respond as alleged.

[5] Pursuant to the City's policy concerning sexual harassment complaints, Lt. Smith and Sgt. Law also met with Wendy Goodwin, Director of Human Resources - City of Lake Charles, on May 12 to inform her of the initiation of the investigation.

standing bumped into her a few seconds later.

In making her report, Davenport said that she had found Kirkum's behavior unwanted and offensive and that she too had experienced similar conduct from Kirkum in the past. Approximately a week prior, she had called Kirkum about a scheduling matter and told him that she had been trying to contact him for some time and that he was difficult to contact. Kirkum allegedly replied by saying that he would call her if she "wore those black pants" for him.

Davenport also recounted an incident from approximately 1998, when she had complained to Lt. Eva Antoine that Kirkum had made inappropriate remarks which made her uncomfortable (the "1998 Complaint").[6] Lt. Antoine confirmed that the 1998 Complaint occurred and added that when Davenport informed her of the situation, she and Sgt. Nathan Keller both verbally counseled Kirkum about his behavior.[7]

At some point during the course of the ensuing investigation into Kirkum's conduct, Internal Affairs was referred to Darling and informed that she may have experienced behavior from Kirkum similar to that complained of by McCullough and Davenport. Lt. Smith subsequently conducted an interview with Darling in which she claimed that on several occasions

---

[6] Davenport presents this reporting incident as if both she and another employee, Staci Conner, complained to Lt. Antoine. However, the record does not indicate that this is in fact what occurred. Staci Conner claims that she experienced some inappropriate conduct from Kirkum but it occurred years before Davenport's 1998 complaint. *See Internal Affairs Case Report, Statements of Staci Conner* (attached as Exhibit 1 to Kirkum's Opposition to plaintiffs motion for partial summary judgment). She claims that by the time Davenport made her complaint, Conner's husband had already talked to Kirkum privately about her issues with him and that she never had any problems with him thereafter.

[7] To avoid redundancy, the court has omitted from this background summary some of the facts surrounding the 1998 complaint. The court will address those facts in more detail in a later section as it constitutes the only competent evidence supporting plaintiffs' claim of prior knowledge of Kirkum's behavior on the part of LCPD and the City.

Kirkum had made inappropriate comments and sexual advances towards her, although she could not recall the specific times and dates. She recalled one incident in which Kirkum called out to her from across the parking lot at LCPD. Once she walked over, he asked her "when are we gonna get together?" When she tried to change the subject, he stated "Oh, it's because I'm a brother." She replied "No, I am married."[8]

Darling recounted another incident that occurred when she passed Kirkum in the hallway one day. She claims that Kirkum told her that when she started work as a police officer, she "had a nice ass" and still did. Additionally, she claimed that every time she entered the Detective Division, Kirkum would stare at her focusing his attention either on her butt or between her legs. She said that she would avoid coming to the police station when she knew that he was working there.

### B. LCPD's Sexual Harassment Policy

On August 20, 1998, the City adopted a Sexual Harassment Policy and Internal Complaint Procedure which prohibited sexual harassment in the City's workplace and provided a roadmap for addressing such complaints.[9] Section 4.1 of the City's policy states that if, after a complaint of sexual harassment, a subsequent investigation supports the complainants allegations, the City will impose appropriate corrective action "such as written warnings, reprimands, demotion, transfer, reassignment, suspension, or termination." The City conducted

---

[8] Darling's husband, Eric Darling, also works for LCPD and with Kirkum as a Sgt. assigned to the Detective Division. Darling claimed that while Kirkum would behave properly when her husband was present, other incidences with Kirkum occurred when he was not around.

[9] *See Affidavit of Wendy Goodwin, Exhibit G,* ¶ 3. The written policy was formally adopted into ordinance #12024 by the Lake Charles City Council on November 2, 2000. *See Plaintiffs' Exhibit F*, p. 2.

employee training sessions in August, 1998 and November, 2000 wherein the policy was disseminated and discussed. Plaintiffs as well as Kirkum each attended both training sessions.[10]

On July 1, 1999, pursuant to General Order A-20, LCPD adopted its own "Sexual Harassment" policy that was intended to follow and reiterate the policy of the City. LCPD's policy specifically stated, "the Department's policy shall echo the City's policy." Shortly after Dixon became Police Chief on January 1, 2002, he reviewed all existing policies and procedures. Section A-20 was re-adopted on March 15, 2002 as part of Dixon's attempt to ensure that LCPD's policies and procedures paralleled the City's in all respects. *Deposition of Kirk Carroll*, p. 13, l. 16 -25, p. 14, l. 1-12 and Exhibit 2 attached thereto.

Plaintiffs' harassment complaints alerted Dixon to a conflict in the language of Section A-6 (setting forth the punishment provisions governing general employee discipline) and Section A-20 of LCPD's policy. The general employee discipline provision characterized sexual harassment as a terminating offense, but the sexual harassment provisions of both LCPD's and the City's policy allowed for punishment up to, but not mandating, termination. *Deposition of Donald Dixon.* p. 21, l. 9 - p. 22, l. 18. After requesting and receiving a memorandum from Sgt. Law and Sgt. Kirk Carroll on the issue and conferring with the City's Human Resources Director, Wendy Goodwin, Dixon ordered a change in Section A-6 in order to make the penalty provisions consistent with both Section A-20 and the City policy. *Dixon Depo.* p. 21, l. 9.

### C. *Dixon's Discipline of Kirkum*

As a result of their investigation, Internal Affairs concluded that Kirkum had violated LCPD's sexual harassment policy. On May 29, 2003, seventeen calendar days after the plaintiffs

---

[10] *Id* at ¶¶ 4-5, 7- 8.

filed their complaint, Dixon reached a decision as to the appropriate discipline for Kirkum. In so doing, Dixon rejected the mandatory language of Section A-6 and instead imposed discipline consistent with Section A-20 and the City's policy. Accordingly, Kirkum was suspended for five days without pay, transferred from the detective division to the project safe neighborhood section, ordered to have counseling, ordered to discontinue all physical contact with plaintiffs and to have all telephone and electronic communications with plaintiffs conducted through a supervisor.

### Standard of Review Under FRCP 56

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.1999).

When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine

issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

## Law and Analysis

### A. LCPD is Not a Proper Party to this Suit

Section 4-03 of the City Charter of the City of Lake Charles makes clear that LCPD is merely a department within the City of Lake Charles.[11] LCPD is not a legal entity and lacks the capacity to sue or be sued as required by Fed. R. Civ. P. 17(b). Therefore, LCPD is dismissed as a defendant in this suit.

### B. No Individual Liability Under Title VII

---

[11] See *City Charter of Lake Charles*, attached as Exhibit 1 to the City's Motion for Summary Judgment [doc. 12].

While Title VII defines the term employer to include "any agent" of an employer, 42 U.S.C. § 2000e(b), this circuit does not interpret the statute as imposing individual liability for damages arising thereunder. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (C.A.5 (La.),1999). Congress' purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate *respondeat superior* liability into Title VII. *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir.1994); *see also Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993). Thus, a Title VII suit against an employee is actually a suit against the employer. Further, outside of an action against an employee personally, a plaintiff does not have an action against both the employer and its employee in an official capacity. *Indest*, 164 F.3d 258, 262.

To whatever extent Plaintiffs are ultimately successful against Dixon and/or Kirkum, the Title VII claims against them arise out of their alleged acts, or failure to act, in their capacity as agents of the City. The law is clear that a party may not maintain a suit against both an employer and its agent under Title VII. Thus, even viewing the facts in the light most favorable to plaintiffs, there is no genuine issue of material fact that necessitates a trial on this particular matter. Accordingly, all Title VII claims against both Dixon and Kirkum are dismissed.

*C. Plaintiffs' § 1983 and state law claims are untimely*

The defendants argue that the claims arising under 42 U.S.C. § 1983 and La. Civ. Code art. 2315 have prescribed because plaintiffs failed to initiate suit within one-year of the date of injury. By a memorandum ruling dated January 24, 2006, this court stated the following:

> The filing of an EEOC claim...does not toll, interrupt, or suspend the prescriptive period for the plaintiffs' § 1983 claims or their state law claims in tort. *See Taylor v. Bunge Corp.*, 775 F.2d 617, 618-19 (5th Cir.1985); *Fussell v.*

*Bellsouth Communications, Inc.*, 1998 WL 12229 at 2 (E.D.La. Jan.8, 1998); *Roth v. N.J. Malin & Assoc.*, 1998 WL 898367 at 5 (E.D.La. Dec.21, 1998). Despite Title VII's range and design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies [s]he possesses and is not limited to Title VII in h[er] search for relief. *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, *459, 95 S.Ct. 1716, 1719 (U.S.Tenn. 1975). "The legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently h[er] rights under both Title VII and other applicable state and federal statutes." *Id* (citing *Alexander v. Gardner-Denver Co.*, 415 U.S., at 48, 94 S.Ct., at 1019. In determining the limitations period for a § 1983 claim, the applicable period provided by state law is applied, in this case Louisiana's one year personal injury limitations period. *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir.1993) (citing *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir.1989)). On its face, the petition clearly establishes that suit was not filed within this period.

Paragraph 9 of the complaint states that the challenged conduct occurred "during their employment and up to May 2003." Suit was not filed until December 27, 2004. The plaintiffs now argue that the alleged sexual harassment and hostile work environment were a continuing tort tolling prescription. In support of their argument, the plaintiffs have submitted documents and exhibits outside the pleadings. Therefore, these motions will be treated as a summary judgment.

The only new evidence offered by plaintiffs are three affidavits, one from each of the plaintiffs, that do not contain any specifics about any improper interaction with Kirkum occurring since his discipline.[12] To the extent that they contain anything other than conclusory allegations,

---

[12] Darling's affidavit complains that when Kirkum "...runs into her, he will engage in eye contact and will never disengage or back down despite his being told to leave her alone; thereby continuing to cause a hostile work environment." She maintains that this eye contact continued through 2003, 2004, 2005 and is ongoing. Darling's allegations of "eye contact" cannot be characterized as harassing conduct. Even if it could be considered harassment of some kind, it is so dissimilar to that which prompted plaintiffs to file this lawsuit that it cannot be considered a continuation of the prior conduct. *See Bustamento v. Tucker* 607 So.2d 532, 543 (La.,1992) (Although the last act, just as previous acts of harassment, need not be in and of itself actionable, it must be an act in furtherance of the continuing pattern of harassment so as to indicate that the harassment has not abated); *Franklin v. Arkansas Fuel Oil Co.*, 218 La. 987, 51 So.2d 600, 603 (1951); *See also Wilson v. Hartzman*, 373 So.2d 204 (La.App. 4th Cir.), *writ refused*, 376 So.2d 961 (La.1979).

In her affidavit, Davenport merely complains that Kirkum continues to walk around the building that Davenport works in when he has no official business there and by doing so, he creates a continuous hostile environment. These allegations fail to outline any specific encounters

faulty inferences, and irrelevant facts, the affidavits contradict each plaintiff's sworn deposition testimony that the City effectively prevented any further interaction between plaintiffs and Kirkum after discipline was imposed.[13] Self-serving affidavits, particularly those which contradict prior testimony and are unsupported by specific facts, are not enough to satisfy plaintiffs' summary judgment burden. *See Celotex*, 477 U.S. at 328, 106 S.Ct. at 255. Because the affidavits are insufficient to establish a continuing tort involving tortuous conduct occurring after May 2003, it follows that no genuine issue of material fact exists with respect to the untimeliness of plaintiffs' claims arising under 42 U.S.C. § 1983 and La. Civ. Code art. 2315. Accordingly, those claims are dismissed.

*D. Title VII claims*

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Title VII violation may be established by proving that discrimination has created a hostile or abusive working

---

with Kirkum that amount to harassment of any kind.

[13] Darling testified that only once has she been in the physical presence of Kirkum since discipline was imposed upon him. In recounting that instance, she makes no mention of any eye contact from which Kirkum would not disengage. *Darling Depo.*, PX 3, p. 65, l. 5-6, 21-25, p. 66 l. 1-4. When Davenport was asked whether she was aware of any further inappropriate behavior by Kirkum, she identified only a comment he made to Lieutenant Hughes (outside the presence of plaintiffs) soon after receiving notice of the formal complaint against him. *Davenport Depo.*, p. 70, l. 12-21,25. In discussing how to respond to the allegations, Kirkum allegedly said, "it's not like I asked them to shove my dick up their ass."*Deposition of Lt. Denise Hughes*, p. 13, l. 17-25. Davenport filed her formal complaint on May 13, 2003 and the alleged comment to Hughes occurred immediately thereafter. Yet plaintiffs did not file this suit until December 27, 2004. Thus, even if this remark could be considered a continuation of the harassment, it would not operate to make plaintiffs claims timely since it did not occur within a year of filing of this suit.

environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In order to make out a *prima facie* claim of co-worker[14] hostile work environment, plaintiffs must establish that they: (1) belonged to a protected class; (2) were subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege of their employment; and (5) the City knew or should have known of the harassment and failed to take prompt remedial action.*Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir.2001); see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir.2002).

At least for the purpose of these motions, the City does not dispute the first four elements

---

[14] In *Faragher* and *Ellerth*, the Supreme Court modified this test with respect to cases where the alleged harasser is a supervisor with immediate or successively higher authority over the harassed employee. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); see also *Watts v. Kroger*, 170 F.3d 505 509-511 (5th Cir.1999). In such cases, the employee need only meet the first four elements of the test. *Faragher*, 524 U.S. at 807; *Felton v. Polles*, 315 F.3d 470, 484. In their opposition to Kirkum's motion to dismiss (now treated as a summary judgment) [doc. 28], plaintiffs argue that Kirkum should be treated as their supervisor for purposes of Title VII. Further, Darling stated in her deposition "We're paramilitary. If he says do this, I have to do it." *Darling Depo.* p. 35. Davenport also testified that "under the protection of our civil service laws, and under the rank, basically, I'm at the bottom of the rank because I am a records clerk."*Davenport Depo.*, p. 16.
Plaintiffs attempts to classify Kirkum as a supervisor merely by virtue of his superior rank has no basis in law or fact. Under Title VII, a supervisor is "a person with immediate or successively higher authority over the employee and who exercises significant control of the employee's hiring, firing, or conditions of employment." *Buchanan v. Heerema Marine Contractors U.S., Inc.*, 2005 WL 2458019, 4, n. 23 (5th Cir. 2005) (citing *Parkins v. Civ. Constr. of Ill.*, Inc., 163 F.3d 1027, 1033 (7th Cir.1998); *Rosales v. City of San Antonio*, 2001 WL 1168797, 7 (W.D.Tex.2001)). Kirkum did not have the authority to hire or fire plaintiffs, nor is there any evidence that he exercised any significant level of control over the terms of their employment. To the extent that Kirkum's rank gave him any authority whatsoever over plaintiffs, it is not substantial enough to raise a genuine issue of material fact with respect to plaintiffs' supervisor created hostile work environment claim.

of plaintiffs' claim. Although the court is not convinced that the conduct complained of herein affected a term or condition of plaintiffs' employment it will proceed directly to the fifth element of plaintiffs' *prima facie* case: whether or not the City knew or should have known of the harassment and failed to take prompt remedial action.

A company, once informed of allegations of sexual harassment, may avoid Title VII liability by taking prompt remedial action to protect the claimant. *See Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402 (5th Cir.1993). Prompt remedial action must be "reasonably calculated to end the harassment." *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 329 (C.A.5 (Tex.),2004) (citations omitted). What constitutes prompt remedial action "necessarily depends on the facts of the case - the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606 (1999), 615 -616 (C.A.5 (Tex.),1999). The employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment." *Waltman v. International Paper Co.*, 875 F.2d 468, 479 (5th Cir.1989) (citations omitted).

With respect to the 2003 complaints, it is clear that LCPD took prompt remedial action as a matter of law. On the same day as the initial complaint, Internal Affairs initiated its investigation. As in all disciplinary matters, it selected three supervisors to provide Disciplinary Action Recommendations ("DAR's") before punishment was imposed. On May 27, 2003, Dixon received the DAR's from Cpt. Dan Powell, Cpt. Ronald Lewis, and Lt. Michael Johnson. Dixon then discussed the appropriate punishment with both the director of human resources for the City and Mayor Randy Roach. *Dixon Depo.*, p. 27, l. 22, p. 28, l. 17. By May 29, 2003, Dixon had reached a final determination on the appropriate action. In total, a mere seventeen calendar days

elapsed between initiation of the formal complaint against Kirkum and the imposition of discipline.

Moreover, in determining whether the employer's actions were remedial, courts within the Fifth Circuit consider the cessation of the offending conduct. *See e.g. Skidmore*, 188 F.3d at 616; *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir.1999); *Waymire v. Harris County*, 86 F.3d 424, 429 (5th Cir.1996); *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309-10 (5th Cir.1987). As discussed in relation to plaintiffs' § 1983 and La. Civ. Code art. 2315 claims, there is no competent evidence to suggest that Kirkum's conduct persisted after his discipline. Thus, LCPD's prompt remedial measures were both "reasonably calculated" and in fact successful in ending the alleged harassment.[15]

Plaintiffs assert that the City failed to take prompt remedial action because Kirkum's behavior from 1998 to 2003 was persistent and offensive to such a degree that the 1998 Complaint placed the City on notice of the existence of a hostile work environment. Although inappropriate in the workplace, the conduct which formed the basis of the 1998 Complaint falls short of severe and pervasive harassment. Even Davenport described Kirkum's conduct at that time as nothing more than "a little problem with Kirkum...touching, rubbing, leaning" and whispering comments such as "you look good in those clothes." *Davenport Depo.*, p. 14, l. 21-24, p. 19, l. 1-6. This behavior, by itself, does not constitute conduct legally sufficient to sustain plaintiffs' hostile work environment claims.

---

[15] Plaintiffs argue that by amending Section A-6 of the LCPD policy and refusing to terminate Kirkum as seemingly required by the then-current version of Section A-6, LCPD's response was not "reasonably calculated" to end the harassment. This argument overlooks the patent contradiction between Sections A-6 and A-20 of LCPD's policy. Dixon did not "change the policy" as plaintiffs assert. Rather, in deciding between the two varying punishment provisions, he chose to apply the one which comported with the City's policy.

The evidence submitted reflects that at the time of their initial complaint, Davenport was offered and declined the opportunity to file a formal complaint, insisting that she only wished for the "behavior to stop." *See Internal Affairs Case Report, Statements of Sgt. Nathan Keller and Lt. Eva Antoine*, p. 4 (attached as Exhibit 2 to Deposition of Sgt. Steven C. Law); See also *Davenport Depo.*, p. 15 l. 18-20. A plaintiff's failure to take advantage of corrective opportunities provided by the employer is dispositive in determining whether the employer took prompt remedial action. *Hockman*, 407 F.3d at 329 (citing *Woods v. Delta Beverage Group, Inc.* 274 F.3d 295, 300 n. 3 (5th Cir.2001). Since Davenport declined a formal complaint and inquiry, the City's failure to conduct one cannot constitute failure to take personal remedial action..[16]

Davenport concedes that Kirkum immediately apologized to her and that his offensive behavior ceased after being verbally counseled by Antoine and Keller. *Davenport Depo.*, p. 15, l. 8-20. That Kirkum's behavior had abated was confirmed by Sgt. Keller when he followed-up with both women several weeks after the complaint. Because no additional complaint was made until 2003, plaintiffs have not established a *prima facie* hostile work environment claim dating back to 1998.

---

[16] Plaintiffs attempt to justify their failure to file any formal complaint until 2003 by claiming that because LCPD's actions against Kirkum in 1998 did not stop the harassment, any additional complaints would have been futile. This argument is without merit. An employer need not use the most serious sanction available to punish a sexual harassment offender. *See Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 525. The verbal counseling and Keller's follow-up inquiry, particularly in light of the fact that Kirkum's behavior at that time did not amount to sexual harassment, were sufficient to constitute prompt remedial action. *See Woods v. Delta Beverage Group, Inc.* 274 F.3d 295, 300 (5th Cir. 2001). Further, once plaintiffs did make their formal complaint, LCPD's response thereto was swift, decisive and effective. Although this fact is not useful in determining plaintiffs' subjective belief that reporting Kirkum's conduct would be futile, it does indicate that any such belief was unreasonable. In order to relieve a plaintiff of the obligation of reporting harassment, it must be objectively obvious that the employer has no real intention of stopping the harassment. *See Woods*, 274 F.3d at 301. Clearly, that was not the situation in this case.

*E. Retaliation*

An employee is required to prove three elements to carry a retaliation claim: (1) that he has engaged in activity protected by Title VII; (2) that the employer took adverse employment action against him; and (3) that a causal connection exists between the protected activity and the adverse employment action. *Ackel v. National Communications, Inc.* 339 F.3d 376, 385 (5th Cir. 2003). Only ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating satisfy the adverse employment action element of a prima facie case of retaliation. *Fierros v. Tex. Dep't of Health,* 274 F.3d 187, 191 (5th Cir. 2001). In the case *sub judice*, there was no adverse employment action taken against plaintiffs either before or after their complaint. McCullough and Darling received transfers to a different department at their request and each retained her rank, salary and benefits. *McCullough Depo.*, p. 47, l. 7-9; *Darling Depo.*, p. 73-74. LCPD's accommodation of their request did not serve a punitive purpose as required in order to be actionable under Title VII. Nor does the fact that they subsequently decided that they preferred their prior positions transform their transfers into adverse employment actions. *See Harrington,* 108 F.3d at 604, *citing Dorsett v. Bd. of Trustees for State Colleges & Universities, citing Dorsett v. Bd. of Trustees for State Colleges & Universities,* 940 F.2d 121, 123 (5th Cir.1991) 940 F.2d 121, 123 (5th Cir.1991) (Undesirable work assignments are not adverse employment actions). Consequently, plaintiffs have not established an adverse employment action by the City, and their retaliation claims under Title VII must be dismissed.

## Conclusion

Plaintiffs claims arising under 42 U.S.C. § 1983 and La. Civ. Code art. 2315 are dismissed as untimely. There is no genuine issue of fact on the prompt remedial action element

of their hostile work environment claim. Their retaliation claim also fails as a matter of law. Therefore, for the reasons stated herein, the motions for summary judgment filed by the City, LCPD and Dixon [docs. 12, 14 & 47] and the motion for summary judgment filed by Kirkum [docs. 18 & 50] are GRANTED and the motion for partial summary judgment filed by plaintiffs [doc. 16] is DENIED. Plaintiffs claims are hereby DISMISSED WITH PREJUDICE in their entirety.

Lake Charles, Louisiana, this 28 day of March, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE